**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Syntelco Limited,<br><br>        Plaintiff,<br><br>v.<br><br>Robert Reish,<br><br>        Defendant. | No. CV-17-00598-PHX-JZB<br><br>**ORDER** |

Pending before the Court is Third Party Defendants', Darrin and Tina Cannon, f/d/b/a Phoenix Heliparts, Inc. (the "Cannons"), Motion to Dismiss all claims in Third Party Plaintiff Robert Reish's Third Party Complaint ("TPC") (doc. 23) pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. 43.) Specifically, the Cannons argue that Reish's claims are barred by the doctrine of res judicata, are inappropriate under Rule 14(a), and erroneously attempt to hold the Cannons individually liable for equitable indemnity and contribution where the underlying claims are not based in tort. (*Id.* at 1.) The Court will grant the Motion in part.

**I.    Background.**

This third-party-litigation stems from the Azerbaijan Ministry of Defense's suit of Robert Reish over his alleged breach of a contract between them regarding the purchase and sale of a helicopter. (Doc. 1.) Defendant Reish asserts that his culpability in the underlying lawsuit, if any, can be properly attributed to the Cannons, and filed his TPC

against the Cannons concurrently with his answer to AMOD's complaint. (Doc. 23.) With that posture of the parties in mind, the following facts are asserted in the TPC, and are taken as true for the purposes of this motion.

### A. Factual History as to Reish and PHP.

On November 13, 2017, Reish filed an answer to AMOD's Complaint (doc. 1). (Doc. 23.) Included therein was Reish's TPC alleging claims against Darrin and Tina Cannon. (*Id.*) At the outset, the Court notes that Reish's TPC is not the model of clarity. Stated plainly, it is meandering, poorly formulated, difficult to read, and largely unintelligible for considerable portions of its factual allegations. That said, to the best of the Court's ability to interpret the TPC, Reish alleges the following facts.

#### 1. Agreements between Reish and PHP.

In 2004, Reish heard about PHP as an entity, and was told to contact PHP on a possible future contract to refurbish a helicopter Reish had just purchased. (Doc. 23 at 38, ¶ 8.) Several years later, between 2011 and 2017, Reish entered into several agreements with PHP for various services, including the purchase, sale, or refurbishment of four separate helicopters. Specifically, Reish alleges the following agreements: (1) the purchase and refurbishment of Helicopter #600FF from PHP in 2011 (*id.*, ¶¶ 14-16); (2) the purchase of Helicopter #0041FF from PHP in 2013-14 (*id.*, ¶¶ 17-19, 24, 26, 28); (3) the purchase of Helicopter # 1170229D from PHP in 2014 (*id.*, ¶¶ 22, 25, 26, 28); (4) the purchase of Helicopter #0175FF from PHP customer, Fedorchuck Leasing, LLC, in 2014 (*id.*, ¶¶ 35, 36).

#### 2. The 41FF Sales Agreement.

On February 13, 2014, PHP and Reish executed a contract for PHP to sell Reish a MD Helicopter, Model 369FF, Serial No. 0041FF (the "41FF") for the "Base Project Price" of $1,395,000. The 41FF had previously been wrecked, and PHP needed to make significant repairs before it could deliver it to Reish in compliance with the 41FF sales agreement. (*See* doc. 43, ex. 2, at 18, ¶ 4 (the 41FF Sales Agreement, requiring that the 41FF be delivered "with all systems operational, a current Airworthiness Certificate, Flight

records up to date, all mandatory Airworthiness Directives and Service Bulletins complied with.")). Because of the pending necessary repairs, the total price in the February 13, 2014 41FF Sales Agreement was left as "TBD" (to be determined), and the delivery date was set as "seven months after Reish paid his deposit and after the parties had agreed upon the scope of work." (*Id.*, ¶ 9).

PHP failed to complete the repairs on the 41FF, render it airworthy, or deliver it to Reish by the delivery deadline. (Doc. 23 at 38.) As late as September 2015, Reish was still pushing PHP to finish the 41FF so he could sell it to another party.

### 3. The Ryuko Note.

In April 2015, on behalf of PHP, Cannon contacted Reish and asked for a loan of $850,000. (Doc. 23 at 50, ¶ 40.) Reish agreed to lend Cannon/PHP the money from his close corporation, Ryuko, Inc., in exchange for a discount note for $1,275,000. (*Id.*, ¶ 41.) As part of the deal, PHP "would receive credit against this note for part of the purchase price of [the 41FF] and Serial Number #175FF." (*Id.*) Reish and Cannon executed the installment note (the "Ryuko Note") in favor of "Ryuko, Inc. Trustees Robert C. Reish and/or Kathleen A. Reish" calling for payment by PHP of $1,275,000 on or before April 1, 2016.

On April 21, 2015, Ryuko wired $850,000 to PHP in connection with the Ryuko Note. (*Id.*) Reish asserts that completion of the Ryuko Note and wiring of funds to PHP effected payment for the remaining balance owed on the 41FF. (*Id.*, ¶ 42 ("Hence, with this $1,275,000.00 deal the two MD 530F Helicopters (serial number #0041FF . . . #0175FF . . .) and a third Hughes Helicopter [#1170229D] would . . . be fully paid."); *see also In re Phoenix Heliparts Inc.*, 2:16-ap-00331-DPC.

### 4. PHP's Chapter 11 Filing.

On September 18, 2015, PHP filed its chapter 11 bankruptcy case. *See In re Phoenix Heliparts Inc.*, 15-bk-12003-DPC at Docket 1.[1] The bankruptcy filing was precipitated by a January 2015 state court judgment against PHP for $26 million and the state court's

---
[1] The Court will use "Bankr. Doc." to identify citations to the docket of bankruptcy case *In re Phoenix Heliparts Inc.*, 15-bk-12003-DPC.

subsequent order requiring PHP to post a supersedeas appellate bond for $6,765,260.89. (Bankr. Doc. 1.) On October 22, 2015, the Court appointed Louis Mukai as chapter 11 Trustee for PHP. (Bankr. Doc. 108.)

### 5. Sale of the 41FF from Reish to AMOD.

Subsequent to the appointment of Mr. Mukai as PHP's chapter 11 Trustee in October 2015, Tina Cannon, without permission of the Trustee or the bankruptcy court, and on behalf of Reish, orchestrated the sale of the 41FF from Reish to AMOD. (Doc. 23 at 56, ¶ 53-54.) At that time, the 41FF's chain of title had become tangled, resulting in a need for Tina Cannon make numerous title transfers to facilitate the sale. Specifically, in November 2015, Cannon had to arrange for title to be transferred from the 41FF's prior owner, RotorMate, to PHP, and for an accompanying Wells Fargo lien on the 41FF to be released.[2] (*Id.*) Once that transfer was complete, Cannon completed documents purporting to transfer title of the 41FF from PHP to Reish and again from Reish to AMOD. (*Id.*)

Reish "was unaware of any Chapter 11 Bankruptcy involving [PHP] until sometime in January 2016." (Doc. 23 at 38.) At all times prior, "Reish was told by [Tina] Cannon that [PHP] had title and ownership of [the 41FF]." (*Id.*) On March 29, 2016, Reish filed a position paper with the bankruptcy court titled "Statement of Position of Robert & Kathrine Reish and Ryuko, Inc. Re: Post Petition/Post Trustee Appointment Sale of Reish/Ryuko Helicopters to 'AMOD' by Tina Cannon." (Doc. 43 at 3; Bankr. Doc. 356.) Therein, Reish argued that he maintained possession of the 41FF, and that it was not estate property at the time relief was ordered in the bankruptcy, or anytime thereafter. (*Id.*) On May 31, 2016, the bankruptcy court entered an order confirming the Trustee's First Amended Plan of Liquidation. (Bankr. Dkt. 482.)

On July 11, 2016, Reish initiated an adversarial proceeding in the matter by filing a complaint against Trustee Louie Mukai "[t]o determine validity of Ownership Interest in [the 41FF]." *See Reish v. Phoenix Heliparts Inc.*, 2:16-ap-00331-DPC at Docket 1 (Bankr.

---

[2] Because PHP had failed to document its 2009 purchase of the 41FF from RotorMate, and the accompanying Wells Fargo lien on the 41FF had yet to be released.

- 4 -

D. Ariz. July 11, 2016).[3] On February 9, 2017, the bankruptcy court held oral argument on the parties' cross motions for summary judgment in the adversarial proceeding. (APBankr. Doc. 35.) On May 4, 2017, the bankruptcy court issued its order granting the Trustee's motion for summary judgment seeking to avoid the transfer of the 41FF under § 549 of the bankruptcy code. (APBankr. Doc. 42.) As a result of that ruling, "[t]he bankruptcy Trustee now claims an interest in the sales proceeds that Reish received from AMOD because of the sale of [the 41FF], which the Trustee claims was estate property when sold." (Doc. 23 at 42, ¶ 21.)

Shortly after the bankruptcy court's May 4, 2017 order Reish filed an appeal, and on May 7, 2018, the Bankruptcy Appellate Panel of the Ninth Circuit granted him relief. *In re Phoenix Heliparts Inc.*, 2018 WL 2107796 at *1 (B.A.P. 9th Cir. May 7, 2018). Specifically, the appellate court held that the lower court had applied the wrong legal standard, vacated the lower court's order, and remanded for further proceedings. *See id.*

### B. Underlying Litigation and Current Procedural Posture.

On February 28, 2017, the Azerbaijan Ministry of Defense (AMOD) filed the underlying lawsuit against Robert Reish, alleging nine claims: (1) breach of contract; (2) breach of the implied covenant of good faith and fair dealing; (3) breach of warranty; (4) fraud and deceit; (5) intentional misrepresentation (6) concealment; (7) conversion; (8) violation of the Arizona Consumer Fraud Act; and (9) unjust enrichment. (Doc. 1; Doc. 26 (Amended Complaint).)

In AMOD's Complaint, they allege the following facts. On November 11, 2015, AMOD and Reish entered into a "Helicopter Purchase Agreement" (the Agreement). (Doc. 26, ¶ 22.) The Agreement provided that AMOD would pay Reish $2,322,000.00 in exchange for a "one fully operational and test-flight ready 530F Helicopter serial number 00041FF." (*Id.*, ¶ 23.) In the Agreement, Reish made written representations regarding the helicopter, including that: "[t]he Helicopter will be delivered with all systems operational, Flight records up to date, all mandatory Federal Aviation Administration ('FAA')

---
[3] The Court will use "APBankr. Doc." to identify citations to the docket of this adversarial procedure in the bankruptcy court.

Airworthiness Directives and Service Bulletins complied with. Helicopter to be delivered to SELLER at Phoenix Heliparts facility in Mesa, Arizona[,]" and that "[t]he SELLER warrants that the title of the Helicopter will be free and clear of all encumbrances at the time of said delivery of the helicopter to the PURCHASER and that the FAA Bill of Sale conveying title is executed by a fully authorized person or persons." (*Id.*, ¶ 24 (citing Exhibit A, ¶¶ 4, 8).)

AMOD asserts that, during preliminary negotiations for the helicopter purchase, Ms. Tina Cannon, President of Phoenix Heliparts, Inc., was identified to AMOD's Counsel as Reish's representative and agent in the negotiations. (*Id.*, ¶¶ 14-15.) It is Ms. Cannon, in her capacity as Reish's Agent, whom AMOD alleges "mislead [AMOD] regarding Defendant Reish's intent and ability to fully perform under the Agreement." (*Id.*, Exh. C.) Specifically, AMOD asserts that "Defendant Reish, acting in his own capacity and/or by and through his agent Cannon, misled the [AMOD] to believe that he was the lawful owner of and held title to the MD530F helicopter that is the subject of this dispute." (Doc. 1, ¶ 17.; Doc. 26, ¶¶ 62-65) AMOD asserts "on information and belief" that Reish "did not hold title to the aircraft shell and parts," and "the aircraft shell and parts have not been assembled into an airworthy aircraft in full compliance with all the terms and requirements of the Agreement between the parties." (Doc. 26, ¶ 58.)

Following the close of escrow, AMOD contacted Reish and Ms. Cannon on numerous occasions, both by phone and in writing, to notify Reish of his failure to comply with certain terms. (*Id.*, ¶¶ 36-38.) On June 3, 2016, AMOD's Counsel sent a letter to Reish's Counsel offering to "waive any and all additional rights and remedies it was entitled to as a result of Defendant Reish's breach of the contract in exchange for the return of the [AMOD's] funds in the total amount of $2,322,000.00." (*Id.*, ¶ 37). Reish did not respond to AMOD's offer of settlement before the deadline expired. (*Id.*) On July 25, 2016, a formal Notice of Revocation of Acceptance was mailed by AMOD's Counsel to Reish's Counsel. (*Id.*, ¶ 38.) Despite that, "[t]o date, Defendant Reish has not provided the Plaintiff with good title or complied with the other terms of the contract including providing an

airworthy helicopter in accordance with the terms of the agreement[.]" (*Id.*) On February 28, 2017, AMOD sued Reish. (Doc. 1.)

On November 13, 2017, Reish concurrently filed his answer to AMOD's Complaint and his TPC. (Doc. 23.) In his TPC, Reish asserts three causes of action against the Cannon Defendants in relation to these agreements: (1) Fraud, (2) Equitable Indemnity; and (3) Contribution. (*Id.*, ¶¶ 100-18.) Specifically, Reish alleges that PHP, who at all times was represented by Defendant Tina Cannon, missed delivery deadlines for the helicopters, lost bills of sale, made material false representations to Reish knowing that Reish would act upon them, wrongfully sold a helicopter Reish owned to another buyer after Reish had paid PHP the full purchase price, and produced "fake" contracts that forged Reish's signature when dealing with Plaintiff Azerbaijan Ministry of Defense (AMOD). (*Id.*, ¶¶ 8-89.) Reish further alleges that Defendant Tina Cannon's spouse, Darrin Cannon, was at all times aware of and assisted with Defendant Tina Cannon's actions to mislead and defraud Reish. (*Id.*, ¶¶ 90-99.)

On January 22, 2018, Third Party Defendants Tina and Darrin Cannon filed a Motion to Dismiss Reish's TPC, asserting that Reish's claims against them fail because they are barred by the doctrine of res judicata, they do not depend upon the underlying claim AMOD asserts against Reish, and erroneously attempt to hold the Cannons individually liable for equitable indemnity and contribution where the underlying claims are not based in tort. (Doc. 43.) The Motion is fully briefed. (Docs. 50, 52.) The Court will grant the Motion in part.

**II.  Legal Standard.**

A successful motion to dismiss under Rule 12(b)(6) must show either that the complaint lacks a cognizable legal theory or fails to allege facts sufficient to support its theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A complaint that sets forth a cognizable legal theory will survive a motion to dismiss if it contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550

U.S. 544, 570 (2007)). A claim has facial plausibility when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556). Rule 9(b) requires a party alleging fraud to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). The complaint "must state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986) (citations omitted). A complaint of fraud must specify "the who, what, when, where, and how" of the alleged misconduct. *Vess v. Ciba-Geigy Corp.*, 317 F.3d 1097, 1106 (9th Cir. 2003).

**III. Discussion.**

The Cannon Defendants assert that Reish's TPC claims against them must be dismissed for three reasons: (1) the claims are barred by the doctrine of res judicata; (2) the claims are not proper under Fed. R. Civ. P. 14(a)(1) because they are not dependent on the outcome of AMOD's claims; and (3) the Cannons are not individually liable for Reish's Equitable Indemnity or Contribution claims because the underlying claims are not based in tort. (Doc. 43.) The Court will address each argument below.

**A. Res Judicata.**

The Cannons first assert that Reish's TPC claims against them must be dismissed under the doctrine of res judicata, because Reish could have raised those claims in the prior bankruptcy proceeding, which has now issued a final plan. (Doc. 43 at 7-9.)

"The doctrine of res judicata bars a party from bringing a claim if a court of competent jurisdiction has rendered final judgment on the merits of the claim in a previous action involving the same parties or their privies." *Davis v. Yageo Corp.*, 481 F.3d 661, 680 (9th Cir. 2007) (quoting *Robertson v. Isomedix, Inc. (In re Int'l Nutronics, Inc.)*, 28 F.3d 965, 969 (9th Cir.1994) (citation omitted)). A party asserting the defense of res

judicata is required to establish three elements: (1) privity between parties in the actions; (2) an identity of claims between actions; and (3) a final judgment on the merits in the previous action. *See United States v. Wanland*, 830 F.3d 947, 956 (9th Cir. 2016) (citing *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 322 F.3d 1064, 1077 (9th Cir. 2003)). It is uncontested that the bankruptcy court's plan (bankr. doc. 482) constitutes a final judgment; thus the Court need only review the first two factors.

### 1. Privity between parties.

At factor one, the Court must evaluate whether there is privity between parties in the actions. *See Wanland*, 830 F.3d at 956. "'Privity' – for the purposes of applying the doctrine of res judicata – is a legal conclusion 'designating a person so identified in interest with a party to former litigation that he represents precisely the same right in respect to the subject matter involved.'" *In re Schimmels*, 127 F.3d 875, 881 (9th Cir. 1997) (quoting *Southwest Airlines Co. v. Texas International Airlines, Inc.*, 546 F.2d 84, 94 (5th Cir. 1977)).

Here, the first factor is met. PHP was the Cannons' closely held corporation, and thus privity is presumed. *New Legacy Bldg. & Design, Inc. v. Amos*, 2008 WL 11338820, at *2 (D. Ariz. Aug. 13, 2008) ("The policies underlying the doctrine of claim preclusion support a finding of privity between a close corporation and its sole or controlling stockholder."); *In re Gottheiner*, 703 F.2d 1136, 1140 (9th Cir. 1983) ("When a person owns most or all of the shares in a corporation and controls the affairs of the corporation, it is presumed that in any litigation involving that corporation the individual has sufficient commonality of interest."). The Cannons, as owners of PHP, were intimately connected with the prior bankruptcy proceeding, with their interests similarly connected and aligned. Because the Cannons were so identified with PHP in the former litigation, and because the Cannons represent that same interest now, the Court finds that PHP and the Cannons are in privity.

Reish argues that the first factor is not met because he is suing a different entity than that which filed for chapter 11 bankruptcy. Specifically, this action is against Darrin and

Tina Cannon as individuals, not PHP as a corporation, and PHP is the entity that filed for chapter 11 bankruptcy, not Darrin and Tina Cannon. While this is true, PHP was a closely held corporation of the Cannons, and thus privity is assumed. Reish makes no argument to rebut that presumption. The Court is satisfied that privity exits between the parties of this action and that of the prior bankruptcy proceeding. *See Wanland*, 830 F.3d at 956.

### 2. Identity of claims between actions.

At factor two, the Court must determine whether there is an identity of claims between this action and the prior action. *Id.*

> The identity of claims analysis takes the following factors into consideration: (1) whether the two suits arise out of the same transactional nucleus of facts; (2) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (3) whether the two suits involve infringement of the same right; and (4) whether substantially the same evidence is presented in the two actions.

*Turtle Island Restoration Network v. U.S. Dep't of State*, 673 F.3d 914, 917-18 (9th Cir. 2012).

Applying this test, the Court finds that there is no identity of claims between those raised in Reish's adversarial proceeding before the bankruptcy court and this third-party action. Although the two suits partially arise out of the same nucleus of facts – the acquisition, repair, and resale of the 41FF helicopter – Reish, in his TPC, also brings allegations of fraud as to three other transactions with the Cannons. Further, Reish seeks indemnity from AMOD's lawsuit against him, alleging that any breach of contract he is culpable of in that underlying action is a direct result of Tina Cannon's fraud on both Reish and AMOD.

Second, the "rights and interests established in the prior judgment" would not "be destroyed or impaired by prosecution of the second action." Specifically, the bankruptcy court's decision that the 41FF is property of the bankruptcy estate, and that the estate is entitled to sale proceeds from the 41FF, at is not impaired if Reish is successful in this action, and the Cannons are found to have committed fraud on Reish as to the sale of the 41FF, or are obligated to indemnify Reish against AMOD's claims. What is more, whether

the 41FF is a part of the PHP bankruptcy estate is now pending once more before the bankruptcy court, having been vacated by the Ninth Circuit Bankruptcy Appellate Panel. It is not possible for any decision in this matter to impede on interests or rights established in a prior judgment that does not exist.

Third, the two actions do not involve infringement of the same right. In the bankruptcy proceeding, Reish filed an adversarial proceeding against PHP asserting ownership of the 41FF, and disputing that it was a part of PHP's bankruptcy estate. (APBankr. Doc. 1.) The bankruptcy court dismissed Reish's claim, finding that the 41FF was not sold to Reish until after the chapter 11 had been filed, and that Reish had no special interest in the 41FF because it was incomplete helicopter and not a "good" or "future good." (APBankr. Doc. 42.) On appeal, that decision was vacated and remanded to the bankruptcy court, and the issue of whether Reish is the proper owner of the 41FF, and whether it is a part of the PHP bankruptcy estate is still pending. (*See* APBankr. Doc. 93.) *See also In re Phoenix Heliparts Inc.*, 2018 WL 2107796 at *1 (B.A.P. 9th Cir. May 7, 2018).

Here, through his TPC, Reish is alleging that the Cannons, while representing PHP, engaged in fraud, and that fraud led Reish to make choices resulting in him being wrongfully sued by AMOD. Reish further alleges that the Cannons must indemnify him for AMOD's claims against him as a result of their fraud, and that to the extent he is liable to AMOD, the Cannons have contributed to that culpability.

The Cannons assert that Reish "should have brought and/or did bring his claims in the Bankruptcy where they could be gathered, jostled, determined, and released with all the other claims." (Doc. 43 at 9.) In support of their argument that Reish was required to bring his fraud claims in the bankruptcy court proceedings, the Cannons cite *In re Wolfberg*, 255 B.R. 879, 882-83 (B.A.P. 9th Cir. 2000), where the Ninth Circuit Bankruptcy Appellate Panel addressed whether res judicata precluded a debtor from claiming a homestead exemption in their residence when the bankruptcy court had already confirmed the chapter 11 plan. 255 B.R. at 881

*Wolfberg* is distinguishable, and the Cannons' argument is not persuasive. In

*Wolfberg*, it was the debtors themselves that failed to raise a claim of exemption prior to the final confirmation of a plan. *Id.* at 882. The court held that the debtors' homestead exemption claim "should have been raised before confirmation because the plan was funded primarily by the proceeds from the sale of debtors' residence, in which they claimed no exemption." *Id.* It was the debtors themselves who failed to raise such a key exemption claim, and thus the debtors who were prevented from raising the exemption claim later in the same proceeding.

The Cannons have not cited, and the Court has not found, any law that would have *required* Reish to bring his ancillary fraud claims concurrently with his assertion of ownership of the 41FF before the bankruptcy court. True, Reish could have brought his fraud allegations against the Cannons in the bankruptcy proceeding at the same time he pursued his adversarial action to determine the ownership status of the 41FF.[4] But, the Court finds nothing that would require him to do so.

At bottom, it is the Cannon's burden to show that the claims between the prior action and this litigation are identical. The Cannons have failed to carry that burden. Reish's fraud claims against the Cannons did not clearly need to be raised before the bankruptcy court. Accordingly, the Court will deny the Cannon's Motion to Dismiss the claims of Reish's TPC as barred by res judicata. *See Turtle Island Restoration Network*, 673 F.3d at 917-18.

**B.     Reish's Fraud Claims under Rule 14(a)(1).**

The Cannons assert that the Court must dismiss the fraud claims contained in Reish's TPC because they "range far beyond AMOD's claims, in violation of Federal Rules of Civil Procedure Rule 14(a)(1)." (Doc. 43 at 10.)

### 1.     Legal Standard.

Rule 14(a)(1) states in relevant part that "[a] defending party may, as third-party-plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it for all

---

[4] Reish asserts that his allegations of fraud against the Cannons would have been improperly raised at the bankruptcy court level, as "the bankruptcy courts have jurisdiction to decide and enter final judgments only upon 'core' issues, . . . [and] no core issues are in play here." (Doc. 50 at 4-5.) But Reish ignores that the bankruptcy court "may hear a proceeding that is not a core proceeding but that is otherwise related to a case under title 11." 28 U.S.C § 157(c)(1).

or part of the claim against it." Fed. R. Civ. P. 14(a)(1). "[A] third-party claim may be asserted only when the third party's liability is in some way dependent on the outcome of the main claim and is secondary or derivative thereto." *Stewart v. Am. Int'l Oil & Gas Co.*, 845 F.2d 196, 199 (9th Cir. 1988).

### 2. Fraud Claims involving the 41FF.

In the instant case, the proposed third-party complaint falls within the purview of Rule 14(a). In its Complaint against Reish, AMOD alleges nine total claims, including: (1) breach of contract; (2) breach of the implied covenant of good faith and fair dealing; (3) breach of warranty; (4) fraud and deceit; (5) intentional misrepresentation (6) concealment; (7) conversion; (8) violation of the Arizona Consumer Fraud Act; and (9) unjust enrichment. (Doc. 26.)

Specifically, in Claim 4, AMOD alleges that "Defendant Reish, individually and through his agent Ms. Cannon, represented to Plaintiff in October and November 2015 that he was able to deliver, and would deliver, to Plaintiff an airworthy helicopter with clean title in compliance with the Agreement terms in exchange for the Plaintiff's payment[,]" but these representations were false. (*Id.*, ¶¶ 67-70.) Further, AMOD asserts that "Defendant Reish, individually and through his agent, Ms. Cannon, knew that the representations summarized above were false, and made the representations detailed herein recklessly and without regard for their truth in a concerted effort to obtain payment from Plaintiff." (*Id.*, ¶ 75.)

In his TPC, Reish alleges that the Cannons engaged in fraudulent acts to induce his purchase of four helicopters, including the 41FF. As Reish states, "[l]iterally all contacts with AMOD and negotiations [as to the 41FF] were made by Tina Cannon." (Doc. 50 at 9.) AMOD argues that Tina Cannon was an agent of Reish who negotiated the contract that was later breeched by Reish, and provided fraudulent misrepresentations to induce AMOD's agreement; but Reish alleges Tina Cannon was an independent entity effecting fraud on all parties involved. If Reish's TPC claims against the Cannons for fraud succeed, then AMOD's claims against Reish for fraud must at least partially fail. Accordingly,

Reish's third-party action against the Cannons, as it pertains to the Cannons alleged fraud surrounding the purchase and sale of the 41FF, is derivative of the underlying litigation, and thus is proper for joinder under Rule 14(a). *See Stewart*, 845 F.2d at 196.

### 3. Other Fraud Claims.

Reish's remaining allegations of fraud included in his TPC pertain to three helicopters (serial numbers 600FF, 1170229D, and 0175FF), which are clearly not relevant to the underlying litigation. As discussed above, AMOD's claims against Reish pertain only to the 41FF. Thus, Reish's allegations of fraud involving helicopters other than the 41FF are improper for joinder under Rule 14(a). *Sw. Administrators, Inc. v. Rozay's Transfer*, 791 F.2d 769, 777 (9th Cir. 1986) ("The decision whether to implead a third-party defendant is addressed to the sound discretion of the trial court.").

Reish argues that "[i]n this case *judicial economy* and placing all the claims together in one proceeding would benefit all parties." (Doc. 50 at 9.) The Court disagrees. To allow for Reish to raise claims so far outside the scope of AMOD's original complaint, which have no bearing on Reish's liability to AMOD's allegations, would disadvantage AMOD by substantially expanding both the scope and the time necessary to complete the litigation. "It is not an abuse of discretion to deny an application for impleader where it will disadvantage the existing action." *Sw. Administrators, Inc.*, 791 F.2d at 777. Accordingly, grant the Cannon's Motion to Dismiss as it pertains to Reish's fraud claims involving helicopters other than the 41FF.

### C. Reish's Claim for Contribution.

The Cannons argue that a contribution claim is impossible where, as here, the alleged torts are all intentional torts. (*See* Doc. 43 at 12-13.) Specifically, the Cannons argue:

> Arizona Revised Statutes ("ARS") Section 12-2501 ("§12-2501") defines the right to contribution. ARS §12-2501(A) states, in relevant part "[e]xcept as otherwise provided in this article, if two or more persons become jointly or severally liable in tort for the same injury to person or property. . . , there is a right of contribution among them even though judgment has not been recovered against all or any of them." In this case, AMOD has sued Reish, not Cannon. AMOD is not asserting joint and several liability, nor has Reish. Additionally, no party has moved to join the Cannons or PHP as

> required parties.
>
> ARS §12-2501(C) states in relevant part that, "[t]here is no right of contribution in favor of any tortfeasor who the trier of fact finds has intentionally, willfully or wantonly caused or contributed to the injury…." In this case, AMOD has alleged that Reish is the tortfeasor and that he has acted intentionally, willfully, or wantonly. Therefore, for Plaintiff to be able to assert a contribution claim, the trier of fact must find Reish liable for a tort and then find that Reish did not intentionally, willfully, or wantonly contribute to AMOD's injuries. AMOD asserts the following as tort claims: Fraud and Deceit, Intentional Misrepresentation, Concealment, Conversion, and Consumer Fraud. All are intentional torts. It is impossible for a trier of fact to find Reish liable for any tort alleged without also finding that Reish intentionally caused AMOD's injuries. Therefore, ARS §12-2501(C) also bars Reish's contribution claim.

(*Id.*)

In his response, Reish argues only that "at this stage of the pleadings and case since there has been no determination as to what degree of fault to apply it is speculative as to whether Reish is 100% innocent on the AMOD complaint[,]" but "[i]f the Court believes that AMOD must bring in the Cannons as a joint tortfeasor to allow Reish to assert a claim for "contribution" then Reish will seek leave to amend and / or if necessary file a separate action and then move to consolidate." (Doc. 50 at 9-10.)

The Court finds that, as plead, Riesh's TPC cannot state a viable claim for contribution under Arizona law. AMOD has not listed the Cannons as joint tortfeasors, and any liability assessed to Reish would necessarily identify him as having committed an intentional tort. Because a claim for contribution is not permitted in such instances, Reish's contribution claim against the Cannons is currently impossible. Reish may seek to have the Cannon's added as joint tortfeasors, but as of this moment, Reishes claim for contribution is futile and will be dismissed.

### C. Reish's Claim for Equitable Indemnity.

The Cannons also seek to dismiss Reish's claim of equitable indemnity. The Cannons argue that "Reish's equitable indemnity claim is barred because, pursuant to the doctrine of unclean hands, he cannot be found liable for an intentional tort without some degree of personal fault." (Doc. 43 at 13.) Arizona cases, like others, have recognized that unclean hands is a defense to equitable relief. *See Tripati v. State, Ariz. Dep't of*

*Corr.*, 16 P.3d 783, 786 (Ariz. Ct. App. 2000) ("The doctrine of 'unclean hands' is an equitable defense to a claim seeking equitable relief.") (emphasis omitted; citation omitted); *see also* Dobbs, Law of Remedies § 2.4(2) at 93 (2d ed. 1993) ("The most orthodox view of the unclean hands doctrine makes it an equitable defense, that is, one that can be raised to defeat an equitable remedy, but not one that defeats other remedies. Courts repeatedly refer to the defense in that light."). Arizona cases refer to unclean hands as an affirmative defense. *See Nat'l Bank of Ariz. v. Thruston*, 180 P.3d 977, 979, ¶ 9 (Ariz. Ct. App. 2008) ("The Thrustons answered, denied the existence of a default, and asserted five affirmative defenses: 'prior' breach of the duty of good faith and fair dealing, 'prior' breach of contract, unclean hands, duress, and estoppel."); *Wieman v. Roysden*, 802 P.2d 432, 433 (Ariz. Ct. App. 1990) ("the Arbuckles claimed as affirmative defenses . . . the doctrine[ ] of unclean hands").

Reish argues that he "is innocent and that the proverbial 'skunk in the woodpile' is Tina Cannon and her husband." (Doc. 50 at 10.) The Cannons may raise the affirmative defense of unclean hands, and will be permitted to present evidence of Reish's alleged improper conduct in connection with their general defense of the claims against them at trial. As stated by Reish, "if it is determined that Reish is innocent and has no liability then the indemnity claim would be relevant." (Doc. 50 at 10.)

At this point, however, the Court finds that Reish has alleged sufficient facts that, when taken as true, show that the Cannons are the ones who perpetrated the fraud against AMOD. It is premature to dismiss Reish's claim of equitable indemnity, based on the potential affirmative defense of unclean hands. Accordingly, the Court will deny the Cannon's Motion to Dismiss Reish's claim for equitable indemnity.

**IV. Conclusion.**

The Court finds that Reish's claims are not barred by the doctrine of res judicata; Reish's fraud claims pertaining to helicopters other than the 41FF are inappropriate for impleader under Rule 14(a); Reish's contribution claim is impossible as currently plead, and will be dismissed; and it would be premature to dismiss Reish's equitable indemnity

claim based on the possible affirmative defense of unclean hands. Accordingly, the Cannon's Motion to Dismiss will be granted in part and denied in part.

**IT IS ORDERED**:

1. The Cannon's Motion to Dismiss (doc. 43) is **granted** as to the following claims:

    A. Reish's fraud claims pertaining to helicopters other than the 41FF (*see* doc. 23, ¶¶ 1-108) are **dismissed without prejudice** as inappropriate for impleader under Rule 14(a).

    B. Reish's contribution claim (*id.*, ¶¶ 115-18) is **dismissed without prejudice** because, as currently plead, the claim necessarily fails.

2. As to all remaining claims in the TPC (doc. 23), the Cannons' Motion to Dismiss (doc. 43) is **denied**.

Dated this 9th day of July, 2018.

Honorable John Z. Boyle
United States Magistrate Judge