**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Syntelco Limited,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>Robert Reish,<br><br>　　　　　Defendant. | No. CV-17-00598-PHX-JZB<br><br>**ORDER** |

Pending before the Court is Third-Party Defendants', Darrin and Tina Cannon, f/d/b/a Phoenix Heliparts, Inc. (the "Cannons"), Motion for Summary Judgment on all remaining counts. (Doc. 69.) Specifically, the Cannons argue that Third Party Plaintiff Robert Reish has waived all claims against the Cannons for all actions that are the subject of this suit. (*Id.* at 1.) The Court will deny the Motion.

**I.　　Background.**

This third-party-litigation stems from the Azerbaijan Ministry of Defense's suit of Robert Reish over his alleged breach of a contract between them regarding the purchase and sale of a MD Helicopter, Model 369FF, Serial No. 0041FF (the "41FF"). (Doc. 1.) Defendant Reish has filed a third-party complaint against the Cannons alleging fraud relating to matters arising out of and relating to the 41FF and seeking equitable indemnity as to AMOD's claims against him. (Doc. 23.) On Summary Judgment, the Cannons allege that Reish has waived his third-party claims against them for all actions that are the subject of this action. (Doc. 69 at 1.) With that procedural posture in mind, the Court briefly summarizes the following relevant facts.

### A. Reish, the Cannons, and PHP.

Phoenix Heliparts, Inc. ("PHP") was a corporation that dealt in aircraft resoration and sales. (*See* Doc. 23 at 39, ¶¶ 12-14; doc. 43.) PHP was operated by Tina Cannon, President, and Darrin Cannon, vice president of operations. (Doc. 70, ¶¶ 2-3; doc. 73 at 2.) Reish hired PHP on multiple occasions to assist with the purchase, restoration, and sale of various aircraft. (*See* Doc. 23 at 38-60.)

On February 13, 2014, PHP and Reish executed a contract for PHP to sell Reish the 41FF, the helicopter at issue in this action. The 41FF had previously been wrecked, and PHP needed to make significant repairs before it could deliver it to Reish in compliance with the 41FF sales agreement. (*See* doc. 43, ex. 2, at 18, ¶ 4 (the 41FF Sales Agreement, requiring that the 41FF be delivered "with all systems operational, a current Airworthiness Certificate, Flight records up to date, all mandatory Airworthiness Directives and Service Bulletins complied with.")). Reish alleges that PHP failed to complete the repairs on the 41FF, render it airworthy, or deliver it to Reish by the delivery deadline. (Doc. 23 at 38.) As late as September 2015, Reish was still pushing PHP to finish the 41FF so he could sell it to another party.

### B. PHP's Chapter 11 Filing.

On September 18, 2015, PHP filed its chapter 11 bankruptcy case. (Doc. 70, ¶ 1; doc. 73 at 1.) *See also In re Phoenix Heliparts Inc.*, 15-bk-12003-DPC at Docket 1.[1] The bankruptcy filing was precipitated by a January 2015 state court judgment against PHP for $26 million and the state court's subsequent order requiring PHP to post a supersedeas appellate bond for $6,765,260.89. (Bankr. Doc. 1.) On October 22, 2015, the bankruptcy court appointed Louis Mukai as chapter 11 Trustee for PHP. (Bankr. Doc. 108.)

On May 31, 2016, the bankruptcy court approved the Trustee's First Amended Liquidation Plan (the "Plan"). (Doc. 77 at 17 (Bankr. Doc. 482).) The bankruptcy court's approval Order established the Phoenix Heliparts Liquidation Trust ("Liquidation Trust"), installed Louis Mukai as the Liquidation Trustee. (*Id.*) The Order also provided the

---

[1] The Court will use "Bankr. Doc." to identify citations to the docket of bankruptcy case *In re Phoenix Heliparts Inc.*, 15-bk-12003-DPC.

Liquidation Trust with the exclusive right to "institute, prosecute, abandon, settle or compromise any causes of action, in accordance with the terms of the Plan and the Liquidation Trust Agreement" and stated that "the Liquidation Trustee will have standing, under state and/or federal bankruptcy law or otherwise, to file, litigate and settle the any remaining causes of action as provided in the Plan and the Liquidation Trust Agreement." (*Id.* at 14-15.) Under the terms of the Plan that was approved by the court, the Liquidation Trust shall "succeed[ed] to all property, rights, powers, causes of action, and other rights of the Debtor and the Trustee, subject only to the terms of the Sale order and APA." (*Id.* at 37.)[2]

The Liquidation Trust Agreement and Declaration of Trust states that "the primary purpose of the Liquidation Trust is (i) oversee and direct the liquidation of the Trust Assets for the benefit of the Beneficiaries thereunder; and (ii) distribute any proceeds of the Trust Assets received by the Liquidation Trust to the Beneficiaries pursuant to the terms of the Plan." (*Id.* at 47.) The Declaration also provides context as to what liabilities were to be conveyed to the Liquidation Trust from the Debtors and the Estate upon approval of the Plan.

> 1.5 Assignment and Assumption of Certain Liabilities. In accordance with Section 1 hereof, the Debtor hereby irrevocably transfer, assign and convey the Trust Assets to the Liquidation Trust, and the Liquidation Trustee on behalf of the Liquidation Trust hereby assumes and agrees that all such Trust Assets are being transferred to the Liquidation Trust subject to the following liabilities, if any, that arise out of or relate to any known or unknown claim (as such term is defined in Section 101(5) of the Bankruptcy Code) or causes of action against the Debtor or their respective Estates:
>
> a) all fees payable pursuant to Section 1930 of title 28 of the United States Code until such time as the Bankruptcy Court

---

[2] "Causes of Action" is a defined term under the Plan and includes "any claims against former management or equity holders."

> **Causes of Action** shall mean all of the Bankruptcy Estate's existing and potential claims and causes of action, including but not limited to any claims that may be brought under the Bankruptcy Code and applicable state law, and causes of action that were pending or could have been brought by the Debtor at the Filing Date. This definition is limited by the terms of the Asset Purchase Agreement and Sale Order. It also includes any claims against former management or equity holders not assigned to TKCA pursuant to the terms of the Sale Order.

(Doc. 77 at 26.)

enters a final decree closing each Debtor's Chapter 11 Case;

b) any expenses incurred and unpaid, or to be incurred, by the Liquidation Trustee in the performance of its administrative duties in respect of the winding up of the Debtor' Estates, including the filing of final tax returns. For the avoidance of all doubt, in no event shall the Liquidation Trustee pay any tax liability for any member, shareholder or owner of a business entity (as defined in Reg. 301.7701-2(a)) that is disregarded as an entity separate from its owner for Federal tax purposes.

c) any obligations owing by the Trust pursuant to the Plan and unpaid (including, without limitation, obligations incurred after the Confirmation Date and the fees and expenses of professionals thereunder); but specifically excluding any Claims which have been barred or discharged pursuant to the Plan.

(*Id.* at 49-50.)

### C. Reish's Adversarial Proceeding.

On July 11, 2016, Reish initiated an adversarial proceeding in the matter by filing a complaint against Trustee Louie Mukai "[t]o determine validity of Ownership Interest in [the 41FF]." *See Reish v. Phoenix Heliparts Inc.*, 2:16-ap-00331-DPC at Docket 1 (Bankr. D. Ariz. July 11, 2016).[3] On February 9, 2017, the bankruptcy court held oral argument on the parties' cross motions for summary judgment in the adversarial proceeding. (APBankr. Doc. 35.) On May 4, 2017, the bankruptcy court issued its order granting the Trustee's motion for summary judgment seeking to avoid the transfer of the 41FF under § 549 of the bankruptcy code. (APBankr. Doc. 42.) The bankruptcy court ordered the Reish, his wife, and his closely held corporation, Ryuko, Inc.("Judgment Debtors"), to post a letter of credit in the amount of $2,887,500 in lieu of a bond to stay execution and enforcement of the judgment order pending appeal. (Doc. 70, ¶ 8; doc. 73 at 2.)

### D. Forbearance Agreement.

On August 17, 2017, the Trustee, Judgment Debtors, and two trusts that held title to secured real property entered into a Forbearance Agreement (the "Agreement") to allow the Judgment Debtors to appeal the Judgment Order to the Bankruptcy Appellate Panel

---

[3] The Court will use "APBankr. Doc." to identify citations to the docket of this adversarial procedure in the bankruptcy court.

- 4 -

without submitting either a letter of credit or bond. (Doc. 70, ¶ 9; doc. 73 at 3.) The Agreement provides, *inter alia*, that

> Subject to the pending proofs of claim on file, which are not released herein, in consideration of Liquidating Trust entering into this Agreement, and without any contingency, precondition, or condition subsequent, Judgment Debtors, Revocable Trust, and Family Trust for themselves and any heirs, executors, trustees, successors and assigns, do hereby jointly and severally fully and forever release, relinquish, discharge, settle and compromise any and all claims, cross-claims, counterclaims, causes, damages and actions of every kind and character, and all suits, costs, damages, expenses, compensation and liabilities of every kind, character and description, whether direct or indirect, known or unknown, disclosed or hidden, in law or in equity, which any of them had or will have against Liquidation Trust, and/or any of its agents, representatives, officers, professionals, employees or contractors on account of, arising, or resulting from, or in any manner incidental to, any and every thing or event occurring or failing to occur at any time in the past up to and including the date hereof, including, without limitation, any claims relating to the Judgment, this Agreement, or any other transaction contemplated by this Agreement. This release specifically excludes any pending claims filed by the Judgment Debtors in the Phoenix Heliparts, Inc. Chapter 11 case, No. 2:15-bk-12003-DPC.

(Doc. 70 at 16 (Exhibit A – § 9.4 of the Forbearance Agreement) (emphasis removed).)

On Summary Judgment, the Cannons assert that they are covered under this release, entered into by the PHP Liquidation Trustee, and thus Reish has waived his claims against them. (Doc. 69.) Reish argues that the Cannons were not party to the Agreement, were not contemplated by the parties who signed the agreement, and thus are not covered by the Agreement's release clause. (Doc. 72.)

## II. Legal Standard.

A party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is also appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at

322. Only disputes over facts that might affect the outcome of the suit will preclude the entry of summary judgment, and the disputed evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

General contract principles govern the "[c]onstruction and enforcement of settlement agreements, including determinations as to the validity and scope of release terms." *Emmons v. Superior Court*, 968 P.2d 582, 585 (Ariz. Ct. App. 1998). "[A] court will attempt to enforce a contract according to the parties' intent." *Taylor v. State Farm Mut. Auto. Ins. Co.*, 854 P.2d 1134, 1138 (Ariz. 1993). In general, Arizona's parol evidence rule prohibits the introduction of extrinsic evidence to vary or contradict, but not to interpret, an agreement. *Id.* Arizona law requires a court to "first consider the allegations made by the proponent of the extrinsic evidence as to the appropriate interpretation of the writing in light of the extrinsic evidence alleged." *Long v. City of Glendale*, 93 P.3d 519, 528 (Ariz. Ct. App. 2004) (citing *Taylor*, 854 P.2d at 1140). The court must then consider the language of the writing to determine if it is reasonably susceptible to the suggested interpretation. *Id.* If it is reasonably susceptible, the court must consider the extrinsic evidence; otherwise, the court should disregard the evidence. *Id.*

### III. Discussion.

It is undisputed that Reish and the PHP Liquidation Trust entered into a Forbearance Agreement absolving the "Liquidation Trust, and/or any of its agents, representatives, officers, professionals, employees or contractors" from liability of any claim Reish may have had against them. (Doc. 70 at 16.) The only issue is whether the Cannons fall within the scope of this release. The Court finds that, under both the plain language of the Agreement and when considering evidence extrinsic to the Agreement, they do not.

The Cannons were not a party to the Agreement between the Liquidation Trust and the Judgment Debtors, including Reish. The plain language of the release, while broad in scope, only pertains to "the Liquidation Trust, and/or any of its agents, representatives, officers, professionals, employees or contractors." (*Id.*) The Cannons do not argue that they

ever filled one of those identified roles.

Instead, the Cannons argue that "the liquidation trust is standing in the shoes of the Cannons and Phoenix Helipart's Inc.," and that "the Cannons, as employees of the debtor over which the liquidation trust exercised control, are contemplated and covered by the Agreement." (Doc 76 at 3.) In support of their position, the Cannons argue that the bankruptcy court has "squarely rejected" Reish's argument that "the Agreement does not specifically apply against the Cannons." (Doc. 76 at 2 (*citing* doc. 77 at 6-8 (APBankr. Doc. 133).) The Court disagrees.

In the Order cited by the Cannons, the bankruptcy court granted the Liquidation Trustee's motion to enforce the release provision of the Agreement against the Reishes, who had claimed ownership of certain parts of the 41FF that remained in the possession of the Liquidated Trustee. (*Id.* at 7.)

The bankruptcy court found that the parts were in the possession of PHP when it filed bankruptcy in September 2015, were in the possession of PHP when Mukai was appointed chapter 11 Trustee, and remained in Mukai's possession when he became Trustee of the Liquidation Trust. (*Id.*) However, the Reishes failed to file a timely proof of claim with in the PHP bankruptcy relative to those parts. (*Id.* at 8.) The court held that

> Knowing PHP, Mukai and/or the Liquidation Trust, were at all relevant times in possession of the FF Parts, on July 13, 2016, the Reishes made demand upon Mukai for surrender of the FF Parts to the Reishes (DE 97-3). (See also DE's 97-2, 97-4 and 97-5). The Reishes' demand was essentially a claim that they were entitled to possession of the FF Parts. Since Mukai refused to turnover the FF Parts to the Reishes, the Reishes may have then held a claim for conversion. Perhaps the Reishes also then held other cognizable claims to the FF Parts or against PHP, the Liquidation Trust and/or Mukai.
>
> When the Reishes executed the FA[Forbearance Agreement] on August 17, 2017, they released all claims they held against Mukai and the Liquidation Trust, including claims related to the FF Parts. See ¶ 9.4 of the FA.
>
> Having released their claims by virtue of the FA, the Reishes may not now contend the FF Parts belong to them or that the FF Parts should be surrendered to the Reishes by Mukai or the Liquidation Trust.
>
> This Court need not determine whether the FF Parts were property of PHP's bankruptcy estate on the Petition Date or property which was or was not transferred to TKCA nor whether the Liquidation Trust is the sole owner

> of the FF Parts. Rather, this Court holds that the Reishes relinquished any claims against PHP, the Liquidation Trust and/or Mukai **related to the FF Parts** by (1) failing to timely file a claim in the PHP chapter 11 case relative to the FF Parts and (2) executing the FA, which agreement was approved by this Court in an order which is now final and non-appealable.

(*Id.* (emphasis added).)

The Court reads the bankruptcy court's opinion narrowly. Significantly, it dealt only with whether contested ownership of the parts was covered by the Agreement's release clause. Claims contesting ownership of physical inventory, unlike the claims of fraud asserted in this case, would clearly fall under liabilities conveyed to the Liquidated Trust from PHP and the Estate under the Plan and Declaration. The distinction is important, because nothing in the record shows that the Liquidated Trust was intended to assume liability for the actions of the Cannons beyond the well-defined terms of the Plan and Declaration.

The Cannons argue that "[t]he parties certainly intended that Reish would release all claims of whatever nature the liquidation trust had the obligation to defend, including ones arising against the Cannons from their acts with Phoenix Heliparts, Inc. before the liquidation trust was formed" and "[t]he agreement would be worth almost nothing to the liquidation trust if the case were otherwise." (Doc. 76 at 4.) The Court agrees. But nothing obligates the Litigation Trust to defend the Cannons against allegations of fraud. To be sure, the Trust Declaration clearly limits its assumption of liability for causes of action against the Debtor to those actions involving "all fees payable pursuant to Section 1930 of title 28 of the United States Code," "any expenses incurred and unpaid, or to be incurred, by the Liquidation Trustee in the performance of its administrative duties in respect of the winding up of the Debtor' Estates, including the filing of final tax returns," and "any obligations owing by the Trust pursuant to the Plan and unpaid . . . specifically excluding any Claims which have been barred or discharged pursuant to the Plan." (Doc. 77 at 49-50.)

The Court must interpret the agreement consistent with the demonstrated intent of the parties. *Taylor*, 854 P.2d at 1140. Here, the Cannons were not party to the Agreement,

| | |
|---|---|
| 1 | and they have failed to present evidence showing that their interests were contemplated by |
| 2 | those who were. Accordingly, the Court finds that the Cannons are not covered by the |
| 3 | release clause of the Agreement, and that Reish has not waived his claims-at-bar against |
| 4 | them. Accordingly, the Cannon's Motion for Summary Judgment will be denied. |
| 5 | **IT IS ORDERED** that the Cannon's Motion for Summary Judgment (doc. 69) is |
| 6 | **denied.** |
| 7 | Dated this 19th day of March, 2019. |

Honorable John Z. Boyle
United States Magistrate Judge